Jeannette TIRADO, Plaintiff,

v.

David EROSA and Joseph Goff, individually and as New York City Police Officers and City of New York, a municipal corporation, Defendants.

No. 93 Civ 3166 (DLC) (BAL).

United States District Court,
S.D. New York.

Nov. 16, 1994.

Robert L. Herbst, New York City, for plaintiff.

Patricia B Miller, Asst. Corp. Counsel, O. Peter Sherwood, New York City, for defendant David Erosa.

Patricia B. Miller, Asst. Corp. Counsel, New York City, for Joseph Goff and City of New York.

## MEMORANDUM OPINION AND ORDER

COTE, District Judge:

### BACKGROUND

.This is a civil rights action brought under Title 42, United States Code, Section 1983, in which plaintiff claims to have suffered physical and psychological harm due to a false arrest and the use of excessive force by defendant police officers. Specifically, plaintiff claims to have sustained:

> severe and probably permanent physical and psychological injury. She has suffered nerve damage, inflammation and irritation, with accompanying pain and weakness, in her neck and lower back. She has also been very seriously emotionally traumatized, with a set of symptoms which have been diagnosed as Post–Traumatic Stress Disorder.

Plaintiff also alleges that the physical abuse included an "unconsented-to touching in the genital area." Because plaintiff has put her psychological condition at issue, defendants are entitled to have plaintiff examined by an expert to testify on their behalf pursuant to Rule 35, Fed.R.Civ.P. Plaintiff does not object to the examination, but has requested to have her attorney and a stenographer present due to what she describes as the particular circumstances of this case, the sensitivity of the subject matter, and facilitation of the cross-examination of defendant's psychiatric expert. Defendants object to the presence of both the attorney and the stenographer, asserting in an affirmation by their expert, Dr. Robert H. Berger[1], that the presence of third parties

---

1. Dr. Berger is a Clinical Associate Professor of Psychiatry at New York University Medical Center. He is board certified in Psychiatry by the American Board of Psychiatry and Neurology and board certified by the American Board of Forensic Psychiatry, Inc. He is currently the

could impede the effectiveness of my examination, as well as potentially hinder my ability to fully and fairly evaluate whether, and the extent to which, a mental illness and/or emotional disturbance may or may not exist.

At the time of the dispute, the case had been referred to Magistrate Judge Barbara A. Lee for pre-trial supervision. On October 4, 1994, Magistrate Judge Lee issued a Memorandum Opinion and Order sustaining defendants' objections to the presence of the attorney and stenographer, and setting final dates for the completion of plaintiff's examination. Plaintiff appealed this order in a timely fashion. Defendants have opposed the appeal. Reviewing Magistrate Judge Lee's order pursuant to Rule 72, Fed.R.Civ. P., and finding that it is not clearly erroneous or contrary to law, the order is affirmed.

### DISCUSSION

Rule 35 provides in part that

[w]hen the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner....

Rule 35, Fed.R.Civ.P. The rule is silent as to whether an attorney or other third party may be present at a physical or mental examination, although such examinations, like all other forms of discovery, are subject to the general provisions of Rule 26, Fed.R.Civ.P., permitting the court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The Court of Appeals for the Second Circuit has not ruled on the exclusion or inclusion of third parties at Rule 35 examinations. District courts in this circuit have both permitted and refused to permit third parties to attend Rule 35 examinations. Each of these rulings has been grounded in the particular facts of the case. None has found an absolute right to have an attorney present during a psychiatric examination. *Compare Vreeland v. Ethan Allen,* 151 F.R.D. 551

(S.D.N.Y.1993) (permitting plaintiffs' attorney to attend psychological examinations); *Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12 (E.D.N.Y.1989) (allowing a court reporter, but not an attorney, to be present at a psychiatric examination); *with Duncan v. Upjohn Company,* 155 F.R.D. 23 (D.Conn. 1994) (plaintiff's physician not permitted to attend psychiatric examination); *Tonge v. Kelly,* No. 89 Civ. 4182, 1993 WL 16121 (E.D.N.Y. January 15, 1993) (no tape recording device permitted in psychiatric examination); *Brandenberg v. El Al Israel Airlines,* 79 F.R.D. 543, 546 (S.D.N.Y.1978) (plaintiff's attorney not permitted to attend psychiatric examination); *Swift v. Swift,* 64 F.R.D. 440 (E.D.N.Y.1974) (plaintiff's physician not permitted to attend examination to determine mental competency).

Plaintiff relies on Judge Brieant's opinion in *Vreeland v. Ethan Allen,* 151 F.R.D. 551. Like the instant case, Judge Brieant was reviewing a magistrate judge's order; unlike the instant case, the magistrate judge in *Vreeland* had permitted an attorney to be present at a psychiatric examination. In his opinion, Judge Brieant found that, given the circumstances of that case (an age discrimination case in which plaintiff claimed psychological damage), the magistrate had not abused his discretion by authorizing the presence of an attorney. *Id.* at 552.

Plaintiff makes several arguments in support of her "essential need" to have her attorney and a stenographer present, none of which persuades us that Magistrate Judge Lee abused her discretion in this case. First, plaintiff asserts that, had she brought this action in state court, she would be entitled to the presence of her attorney and a stenographer as of right. This case, however, is governed by federal law, which takes a "diametrically opposite view of the problem and generally prohibit[s] plaintiff's attorney from being present at a psychiatric or physical examination of plaintiff." *Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. at 13.

Plaintiff also argues that the presence of her attorney and stenographer will aid in the

Director of Bellevue Forensic Psychiatry Service       for Bellevue Hospital.

cross-examination of defendants' expert witness and reduce the risk of any impropriety during the examination. While it is undoubtedly true that the presence of these third parties will help plaintiff cross-examine defendants' expert, the same would be true in any case where a psychiatric examination is conducted, and sheds no light on why this case presents any special circumstances. Moreover, defendants were offered no such aid with plaintiff's examination by her own psychiatric expert, which apparently took place without the presence of third parties.

Plaintiff also asserts that the subject matter is especially sensitive, but this consideration cuts both ways. On the one hand, plaintiff may not feel comfortable discussing intimate matters with defendants' psychiatric expert, but on the other it is not clear that having four people in the room rather than two will improve this situation. Plaintiff has made no showing that the presence of her male attorney and a complete stranger (male or female) taking down every word would make her any more comfortable.

Plaintiff also relies on the wording of Dr. Berger's affirmation which asserts that the presence of third parties "could" rather than "would" hinder the effectiveness of the examination. Plaintiff argues from this choice of words that Dr. Berger is not really opposed to his presence at the examination and cites a prior examination by Dr. Berger in another case that counsel attended as plaintiff's counsel without opposition from Dr. Berger. Plaintiff has placed too much reliance on one word. Read in its entirety, Dr. Berger's affirmation is a strong statement of opposition to the presence of any third parties at the examination. Dr. Berger's affirmation cites the "one-to-one interview of a patient" as the principal method of psychiatric examination. The presence of third parties, according to Dr. Berger,

> could jeopardize the clinical purpose of the examination to a great degree. The presence of third parties could create stressors that increase a patient's self-consciousness, both on a conscious and unconscious level. This potentially inhibits a patient's ability to discuss sensitive issues.

As for the prior examination cited by plaintiff, Dr. Berger avers that

> [s]everal years ago I was retained as a defendant's expert in a civil proceeding and examined the plaintiff in the presence of Robert Herbst, the plaintiff's counsel. I did so at the request of the attorney representing the defendant in that action. It is, however, not my regular practice to examine a patient in the presence of a third party.

Dr. Berger's affirmation presents a sufficient showing that the presence of third parties would be likely to interfere with his examination of the plaintiff and that he opposes conducting it in the presence of others.

The Magistrate Judge's order is therefore affirmed, and the psychiatric examination of plaintiff will take place within the time to be designated by Magistrate Judge Lee, without the presence of plaintiff's attorney or a stenographer.

## MEMORANDUM OPINION AND ORDER

LEE, United States Magistrate Judge.

This civil rights action pursuant to 42 U.S.C. § 1983 against the City of New York and two police officers was referred to me for pre-trial supervision by the Hon. Kimba M. Wood, U.S.D.J., by Order of Reference entered August 12, 1994.[1] Presently before me is a dispute arising out of plaintiff's demand to have her attorney and a stenographer present at her examination by defendants' psychiatrist pursuant to Rule 35, Fed. R.Civ.P. For the reasons discussed below, defendants' objections to the presence of the attorney and the stenographer are sustained; and final dates are set for the completion of the examination and for all other pre-trial proceedings.

## BACKGROUND

Plaintiff seeks to recover for physical and psychological harm, including post-traumatic stress disorder, which she alleges arise out of false arrest and use of excessive force by the defendant police officers. The City is joined

---

1. The case is presently assigned to the Hon. Denise L. Cote, U.S.D.J.

on the basis of allegations that the individual defendants acted pursuant to "a de facto custom or policy." [2] In addition to plaintiff's claim for relief under § 1983, pendent tort claims arising under New York law are asserted. Both compensatory and punitive damages are sought [3] and a jury demand is endorsed on the face of the complaint.

This action was filed May 11, 1993. The initial Rule 16 conference was held before Judge Wood on August 3, 1993, and a scheduling order was filed August 5, 1993, which among other things set a discovery deadline and a ready-trial date. Judge Wood entered three subsequent orders extending those deadlines.

When the case was referred to me, the discovery deadline was October 7, 1994. Letter reports from counsel made clear that that deadline would not be met because of outstanding discovery disputes. I held a telephone conference with counsel on August 31, 1994; gave instructions for compliance with my "Procedures for Informal Resolution of Discovery Disputes"; and set a briefing schedule, limited to the issue whether plaintiff was entitled, over defendants' objection, to have her attorney and a stenographer present at her examination by defendants' psychiatrist, pursuant to Rule 35, Fed. R.Civ.P. Pending resolution of that dispute, the issue of a new discovery deadline was held in abeyance.

### DISCUSSION

*Persons Entitled to Be Present at Plaintiff's Examination*

Plaintiff wants her attorney and a "stenographer" present to facilitate cross-examination of the psychiatrist if defendants call him at trial; and

Plaintiff is a young woman whose physical abuse at the hands of the police in this case included an unconsented-to touching in the genital area. She should not have to go alone to a lengthy encounter with a male psychiatrist representing the defendant who physically abused her without her attorney, whom she knows and is comfortable with, and who can insure that her rights are protected and that nothing improper will occur during the examination.[4]

Defendants argue that the presence of the attorney and/or stenographer will interfere with the examination; as explained in the affirmation of the psychiatrist they have designated to conduct it:

Unlike physical examinations, the one-to-one interview of a patient by a psychiatrist is the principal method used to gain knowledge of the patient and nature of any pathology she may exhibit. This method, which is normally confidential and private, is designed to foster interpersonal exchange of the most personal details of the patient's life which are necessary for the doctor to come to a proper diagnosis. Moreover, the psychiatrist observes more than just the words spoken by the examinee, but also observes, among other things, the patient's body language and demeanor as part of the overall analysis.[5]

Rule 35 is silent on the question of who may attend a "physical or mental" examination, although such examinations, like all other forms of discovery, are subject to the general provision of Rule 26(c) that the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." No black letter rule has emerged from the reported decisions on the issue; weighing the conflicting considerations present in each case, courts have reached different results on different fact patterns. *Compare e.g., Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12, 13–14 (E.D.N.Y. 1989) (excluding attorney but permitting

---

2. Cplt. ¶¶ 27–29.

3. *Id.* ¶ 34.

4. "Plaintiff's Brief Supporting the Presence of Counsel and a Stenographer at her Psychiatric Exam to be Conducted by Defendants," filed September 12, 1994 ("Pl. Br.") at 4.

5. "Affirmation" of Robert H. Berger, M.D. executed September 19, 1994 ("Berger Aff.") ¶ 4. Despite the recital that the affirmation is made "pursuant to Rule 2106 of the Civil Practice Law and Rules," I have considered it the equivalent of a Declaration pursuant to 28 U.S.C. § 1746, since it expressly declares that the statements made therein are true under penalty of perjury.

court reporter where plaintiff's difficulty with English language might impede his ability to communicate to his attorney what occurred at the examination) *with Tomlin v. Holecek*, 150 F.R.D. 628, 631 (D.Minn.1993) (tape recorder excluded where plaintiff's proposed objections to the psychiatrist's technique were "without any factual verification").

Plaintiff relies primarily on two cases in which the examined party was permitted to have counsel present, *Vreeland v. Ethan Allen, Inc.*, 151 F.R.D. 551 (S.D.N.Y.1993); *Zabkowicz v. The West Bend Co.*, 585 F.Supp. 635 (E.D.Wis.1984).[6] In *Vreeland*, Judge Brieant held only that a magistrate judge did not abuse his discretion in permitting the presence of an attorney. *See* 28 U.S.C. § 636(b)(1)(A). The very brief reported decision does not discuss the facts on which the magistrate judge based his ruling and is therefore of no assistance in determining how that discretion should be exercised in this case. In *Zabkowicz*, the court was concerned "that an unsupervised examination could easily be transformed into a de facto deposition," affording defendants unfair "advantages" of an unspecified nature. 585 F.Supp. at 636. With deference, I find that reasoning unpersuasive.

Finally, plaintiff argues that had this action been brought in State court, she would be entitled to the presence of her attorney and a stenographer as a matter of right. Having elected to frame her cause of action as a violation of federal Constitutional right and to invoke the jurisdiction of this court, she has of course also elected to give up any procedural advantages the State forum might have afforded. In fact, the differences between State and federal decisions on this point flow from very different views of the rôle of a physical or mental examination in the discovery process. As discussed in detail in *Di Bari*, the underlying rationale for the State rule "is the view that the examination is part of the adversarial process," whereas the federal courts have in general taken a "diametrically opposite view," specifically that "these examinations should be divested as far as possible of any adversary character." 126 F.R.D. at 13 (citations omitted). Certainly, in an era in which classified advertisements offering expert testimony appear commonly in publications addressed to lawyers,[7] the adversarial context in which these examinations occur is a reality that must be taken into account in determining what procedures best accommodate the conflicting interests of the parties in a particular case. To make that accommodation, it is not, however, necessary to invest a psychiatric examination with all the trappings of a deposition, or to engraft on Rule 35 an across-the-board rule that may not be appropriate in all cases. Rather, a federal court applying the federal discovery rules should balance the competing considerations involved in the particular case and set such conditions for the examination as are just. *See generally Galieti v. State Farm Mut. Auto. Ins. Co.*, 154 F.R.D. 262 (D.Colo.1994).

### 1. *Trial preparation.*

If plaintiff challenges the accuracy of statements attributed to her in the report of defendant's examining physician, or in his testimony, the jury will not need a "transcript" to determine whom to believe. The fact that each expert who testifies at trial has been selected and paid by the party who called him will be known to the jury. To the

---

6. Plaintiff's attorney also cites an unrelated 1988 case in which he was present at the examination of his client by the same psychiatrist designated by the City in this case and alleges that that procedure "proved critical to the successful cross-examination of [the psychiatrist]," whose written report allegedly "mischaracterized some of the information and omitted other information provided by the plaintiff." Pl.Br. at 2–3; Reply Affirmation of Robert L. Herbst, Esq., executed September 26, 1994, ¶ 8 n. 2. Since there appears to have been no dispute in that case (where the presence of plaintiff's attorney appears to have been requested by *defendant, see* Berger Aff. ¶ 8), and no ruling by the court on any aspect of the procedure agreed to by counsel, it is of no help here. Although reply papers were not contemplated by the schedule set in the August 31 telephone conference and plaintiff's attorney did not follow the instructions given when he telephoned my chambers that a request to submit reply papers must be in writing, I have nevertheless considered the Reply Affirmation and found the arguments made therein without merit.

7. *See, e.g., N.Y. Law Journal*, October 3, 1994, at 10, cols. 6–7.

extent that plaintiff's concern is the possibility of expert testimony based upon an improperly conducted examination, the existing rules provide ample protection.[8] For example, Rule 35 specifies in some detail what the examiner's written report must contain and provides that the requirement of a written report "does not preclude discovery of a report of an examiner or the taking of a deposition of the examiner in accordance with the provisions of any other rule." If the examining psychiatrist is to be called by the defendants as a witness at trial, the quoted provision would, among other things, permit plaintiff to serve a request for disclosure of expert testimony and/or a notice of the expert's deposition, pursuant to Rules 26(a)(2), and 26(b)(4)(A), Fed.R.Civ.P., respectively, as amended effective Dec. 1, 1993.[9] In short, effective cross-examination of the adverse expert does not depend upon establishing that he has lied about what took place at the examination or committed some "impropriety"; it calls for thorough preparation by counsel who is fully familiar with the issues in the case and the strengths and weaknesses of the report of his own expert.[10]

The introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding, much in the way that television "coverage" of events qualitatively changes what occurs in front of the camera. I am not prepared to permit such an abuse of Rule 35. I agree with Judge Borcher's conclusion in *Galieti* that

> There should be no presumption either way. In appropriate cases, it may be necessary to issue an appropriate protective order.... [T]he party seeking the presence of a third party or recording device must carry the burden of convincing the court.[11]

The appropriate inquiry is whether special circumstances are present which call for a protective order tailored to the specific problems presented. Plaintiff has not carried that burden in this case.

### 2. *Sensitivity of subject matter.*

Plaintiff's complaint expressly alleges that one of the individual defendants, "[i]n the course of arresting plaintiff, ... offensively touched plaintiff in her genital area," and that as a result of "the acts and conduct of the defendants complained of" she has suffered, among other injuries, "grievous [sic] mental anguish and emotional distress, pain and suffering, humiliation, embarrassment ... and other damages."[12] To the extent that plaintiff's concern is the delicate nature of some of the questions that the psychiatrist must necessarily ask in light of her allega-

---

8. Counsel's expressed concern about possible impropriety on the party of the examining physician is mere conjecture. In the absence of some factual basis for such allegations, I am not prepared to assume that licensed physicians, bound by rules of ethics and the laws of the State of New York, even when employed as experts in litigation, are so untrustworthy that a Rule 35 examination must be both recorded and monitored by counsel as a matter of course. If there were any factual predicate for genuine concern that something improper might occur, the more appropriate remedy would appear to be an order directing the use of a different examiner.

9. Rule 26(a)(1), as amended, makes the disclosures prescribed by that subsection mandatory "except to the extent otherwise stipulated or directed by order or local rule." By Order entered December 1, 1993, the Board of Judges of the Southern District of New York ruled that Rule 26(a)(1) and other provisions "for mandatory disclosures without request ... shall not become operative in this District without further local

rule." Thus, although expert discovery pursuant to Rule 26(a)(2) is not, in this district, "mandatory ... without request," parties may obtain the discovery by serving the appropriate written "request."

10. Chief Magistrate Judge Chrein applied similar reasoning in an unreported decision relied on by defendants, *Tonge v. Kelly*, No. 89 CV 4182 (EHN), 1993 WL 16121 (E.D.N.Y. Jan. 15, 1993), in denying permission for a psychiatric examination to be tape recorded. That reasoning is even more forceful here where the substantially more intrusive presence of counsel and a stenographer are sought. A copy of the *Tonge* decision is attached as Exhibit A to "Defendants' Memorandum of Law in Opposition to the Request by Plaintiff's Attorney to be Present with a Stenographer During a Psychiatric Examination of Plaintiff Conducted by Defendants' Expert" filed September 19, 1994 ("Def. Mem.").

11. 154 F.R.D. at 265.

12. Cplt. ¶¶ 17, 32.

tions, she has made no showing that the presence of her male attorney and a complete stranger (male or female) taking down every word would make her any more comfortable in discussing these subjects. Compare *Tomlin*, 150 F.R.D. at 632, where the court considered the "sensitivity of the subject matter" a factor weighing *against* permitting a third party or tape recorder to be present at a psychological examination.

### 3. *Other relevant considerations.*

Finally, if medical examinations were to be conducted like depositions, the "adversarial" process would of course have to be symmetrical: if plaintiff intends to offer at trial the expert testimony of an examining psychiatrist selected by her counsel, defendants would be entitled to the same safeguards, to be sure that the expert's report accurately reflected what plaintiff said during the examination and did not omit material unfavorable to plaintiff's case. In this case, that would require a re-examination, since plaintiff has apparently already been examined by her testifying expert and his report completed.[13] *Cf. Tomlin*, 150 F.R.D. at 632 (Rule 35 interpreted as "a forthright attempt to provide a 'level playing field' between the parties in their respective efforts to appraise the Plaintiff's psychological state"). Judicial economy would not be served by such duplication.

In summary, balancing the competing considerations argued by the parties, the conditions plaintiff seeks to impose on the psychiatric examination are not warranted on the facts of this case. Defendants have a legitimate interest in eliminating intrusions that would affect the results of the psychiatric examination of plaintiff to which they are entitled by virtue of the allegations of her complaint placing her mental health in issue. Plaintiff's legitimate interest in the proper and professional conduct of the examination and subsequent effective cross-examination of the psychiatrist can be satisfied by means that do not require such an intrusion. Accordingly, the examination should proceed

with no one present except the plaintiff and the examining psychiatrist.[14]

### *Remaining Pretrial Proceedings.*

This is not a complex commercial case in which large quantities of documents, depositions outside the State, or other time-consuming discovery is necessary. The failure of the parties to meet any of the earlier deadlines set by Judge Wood is unexplained. In any event the matter must now proceed expeditiously.

Any discovery disputes that may hereafter arise are to be promptly submitted by joint letter, manually signed by each attorney of record in his or her own hand, in accordance with the "Procedures for Informal Resolution of Discovery Disputes in Cases Assigned to Magistrate Judge Barbara A. Lee" previously distributed to counsel. Compliance with these procedures is not optional.

Counsel should confer promptly to schedule the psychiatric examination of plaintiff for the earliest mutually convenient date, in order to allow time for any follow-up discovery without the necessity of requesting amendments to the schedule set by this order. If counsel cannot agree on a date, the joint letter procedure should be followed, after taking into account that a date set by the court is likely to be more inconvenient than one reached by agreement. Any application for enlargement of time to complete specific discovery must state with particularity facts outside the control of counsel amounting to good cause for the failure to complete the matter within the deadline. Delay in compliance with this order will be taken into account in considering any applications for enlargement of time to complete particular discovery matters. Under no circumstances will the general deadline for completion of all discovery be further extended.

In light of the foregoing, it is hereby

ORDERED:

1. Defendants' objections to the presence of plaintiff's attorney and/or a stenographer at plaintiff's psychiatric examination are sustained. The examination is to proceed

---

13. *See* Def.Mem. at 2.

14. If it is the examining psychiatrist's normal practice to have a nurse or assistant present during any portion of the examination of a female patient, nothing herein is to be construed as prohibiting that procedure in this case.

promptly and in no event later than October 31, 1994.

2. In the event that plaintiff seeks follow-up discovery after receiving a copy of the examiner's report, such requests are to be served within ten days of receipt of the report by plaintiff's attorney or November 15, 1994, whichever is earlier. If the examiner's report has not been received by November 1, 1994, plaintiff may seek an extension of the November 15 deadline by motion on notice in accordance with local Civil Rule 3.

3. All discovery is to be completed by December 30, 1994. Any application for an enlargement of time to complete specifically identified discovery must be served and filed no later than December 15, 1994.

4. Deadlines set hereby may not be altered by agreement of counsel except upon stipulation "so ordered" by the undersigned for good cause shown. In view of the age of this case and the several extensions of time previously granted, any application for enlargement of time pursuant to this Order shall be brought on by motion, returnable on any business day in accordance with local Civil Rule 3, supported by affidavit(s) on personal knowledge stating with particularity facts amounting to good cause. The press of other business does not ordinarily amount to good cause.

5. All papers filed with the Clerk of the Court must bear the *complete* docket number, 93 Civ 3166 (DLC) (BAL). Motion papers should also include, opposite the caption, the words "REFERRED TO MAGISTRATE JUDGE BARBARA A. LEE."

6. Courtesy copies of all papers shall be sent or delivered to chambers, Room 121, United States Courthouse, simultaneously with filing with the Clerk. Chambers copies must include proof of service and show the signature of the attorney filing the original.

7. Wherever the term "affidavit(s)" is used herein, declaration(s) pursuant to 28 U.S.C. § 1746 are permissible.

The foregoing is a determination pursuant to 28 U.S.C. § 636(b)(1)(A).