**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**GRIEF BROTHERS CORPORATION,**
Defendant.

No. 02–CV–468S(F).

United States District Court,
W.D. New York.

Aug. 28, 2003.

---

Katherine E. Bissel, of counsel, New York District Office, New York City, Arnold J. Lizana, III, of counsel, Boston, MA, Vorys, Sater, Seymour and Pease, LLP, Andrew C. Smith, of counsel, Columbus, OH, for plaintiff.

Hodgson, Russ, LLP, Hugh M. Russ, III, of counsel, Buffalo, NY, for defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

In this employment discrimination case, filed July 1, 2002, alleging constructive discharge based on sexual harassment, Defendant moves for an order directing Michael Sabo, the charging party ("Sabo"), to submit to a medical examination pursuant to Fed. R.Civ.P. 35, to compel production of Sabo's medical records, and for costs. Specifically, Plaintiff contends that by failing to prevent a hostile work environment caused by solicitations for sex, sexually explicit jokes, offensive gestures, and name-calling from employees, Defendant inflicted emotional pain and suffering on Sabo.

Defendant's motion was filed June 23, 2003 ("Defendant's Motion") (Doc. No. 12); Plaintiff's Opposition ("Plaintiff's Opposition") was filed July 18, 2003 (Doc. No. 17). Defendant's Reply Memorandum was filed August

1, 2003 ("Defendant's Reply") (Doc. No. 18). Oral argument was conducted on August 20, 2003. Based on the following, Defendant's motions are GRANTED.

■ As relevant, Fed.R.Civ.P. 35 authorizes a mental examination of a party "[w]hen the mental ... condition of a party ... is in controversy ... [and] upon good cause shown." In the case of Title VII job discrimination claims, Rule 35 mental examinations may be obtained where a plaintiff's allegations of emotional distress amount to "more than a claim for 'garden variety emotional distress damages ....'" *Cauley v. Ingram Micro, Inc.,* 216 F.R.D. 241, 243–44 (W.D.N.Y.2003), *objections denied,* 216 F.R.D. 245 (W.D.N.Y.2003) (Skretny, D.J.). Rule 35 requires the court to assess whether the party's mental condition is really and genuinely at issue and that good cause exists for the requested examination. *Schlagenhauf v. Holder,* 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). "Whether the requisite showing has been made in a particular case is within the 'sound discretion' of the court." *Cauley, supra,* at 243–44 (citing *Gattegno v. Pricewaterhousecoopers, LLP,* 204 F.R.D. 228, 230 (D.Conn.2001)).

Defendant contends that Plaintiff has, in response to Defendant's First Set of Interrogatories, stated that Defendant's sexually harassing workplace environment resulted in Sabo's suffering "non-pecuniary damages for emotional pain and suffering ... including but not limited to severe humiliation, anxiety, depression, loss of self-esteem, sleeplessness and weight gain." Defendant's Motion, Exhibit A, Plaintiff's Answer to Defendant's Interrogatory No. 1. As a result, Plaintiff seeks non-pecuniary damages, including punitive damages, of $300,000 and lost wages and other economic losses of $74,958.18. *Id.*

Defendant further points to Sabo's deposition testimony in which Sabo testified he has been treated by a social worker, a psychologist and psychiatrist, since leaving Defendant's employment, and is currently on prescribed medications for depression. Defendant's Motion at 2. Defendant also cites to Sabo's deposition testimony admitting that he has a long history of depression and has been treated for it since his late teenage years. Additionally, Sabo testified that depression runs in his family, that Sabo's brother and cousin committed suicide, and that Sabo twice attempted suicide, the latest attempt being within one year of his employment with Defendant which commenced in November 1998 and terminated in April, 1999. *Id.*

In federal civil cases, document production, pursuant to Fed.R.Civ.P. 34, may be obtained for information that is admissible or reasonably calculated to lead to the production of relevant evidence. *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.,* 181 F.R.D. 229, 236 (W.D.N.Y.1998) (citing *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991)). Defendant's motion to compel seeks production of Sabo's medical records to assist the licensed psychiatrist, Dr. Brian Joseph, retained by Defendant to conduct the requested mental examination. Defendant's Motion at 3. Defendant also seeks such records to learn the basis for Sabo's claim for $26,849 in unreimbursed medical expenses for which he would have received insurance coverage had he remained employed by Defendant. *Id.* at 3–4. Defendant has agreed to enter into a stipulated protective order covering such records; however, Plaintiff has nevertheless refused to comply with Defendant's request. *Id.* at 4.

In opposition, Plaintiff contends that its allegations do not establish that Sabo's non-pecuniary damage claims go beyond the "garden variety," in an employment discrimination case and, as such, do not warrant a Rule 35 examination. Plaintiff's Opposition at 4–5. In particular, Plaintiff relies on case-law holding that generalized damage claims for emotional distress based on "embarrassment," "humiliation," "sleeplessness," "loss of appetite," "shock," "upset," and "the like," do not support a Rule 35 mental examination request. *Id.* at 5. However, Plaintiff's pleadings, interrogatory answers, and its papers filed in connection with the instant motion demonstrate otherwise.

Specifically, Plaintiff's Answer to Defendant's Interrogatory No. 1 states, unambiguously, that Defendant's violations of Title VII resulted in "emotional pain and suffering endured by Mr. Sabo, including but not lim-

ited to *severe* humiliation, anxiety, *depression*, loss of self-esteem, sleeplessness and weight gain." Defendant's Motion, Exhibit A, Plaintiff's Answers to Interrogatory No. 1 of Defendant's First Set of Interrogatories (emphasis added). These allegations were reiterated in Plaintiff's Opposition and characterized as describing "*serious* emotional distress" albeit not "incapacitating Mr. Sabo, preventing him working, or causing any unusual medical injuries as contemplated under Rule 35." Plaintiff's Opposition at 6 (emphasis added). However, neither Rule 35 nor the caselaw cited by Plaintiff requires a showing that as a result of the alleged mental condition at issue, the requested party had suffered such debilitating consequences. Indeed, in the *Schlagenhauf* case, the Supreme Court acknowledged that the "in controversy" and "good cause" requirements of Rule 35 would be met where a mental injury or condition was pleaded as the basis for a damages claim. *Schlagenhauf, supra,* at 117, 85 S.Ct. 234. In *Cauley*, plaintiff alleged her claimed emotional distress was so extensive that it required hospitalization and treatment by a physician. *Cauley, supra* at 14–15. To require, as Plaintiff suggests, such a degree of complete debilitation resulting from a physical or mental condition would eviscerate the purpose of Rule 35. Plaintiff's unfounded construction of the rule is therefore without merit.

Here, Sabo stated that while employed by Defendant he did not require treatment by a psychologist or psychiatrist. Defendant's Motion, Exhibit C at 26. However, in May 1999, following his termination of employment with Defendant, Sabo consulted with a social worker regarding Sabo's emotional condition, and within "a month or two" after returning to Ohio, in September 1999, Sabo consulted with a psychiatrist, Dr. Codispoti, and in 2000 was prescribed Depakote, an antidepressant medication, 500 mg daily by his general physician. Plaintiff's Deposition

at 17, 20, 30–31. (Court Exhibit A). Sabo also was prescribed Paxil and Wellbutrin, antidepressant medications, by Dr. Codispoti. *Id.* at 27–28.[1]

Upon this record, the court finds Plaintiff has placed Mr. Sabo's mental condition in controversy within the meaning of Rule 35, that Defendant's request for a mental examination should therefore be granted, and that the request for documents responsive to Defendant's request for Sabo's medical records should also be granted. Here, Plaintiff has alleged in its Complaint mental distress injury on behalf of Sabo and has asserted in its answer to Defendant's Interrogatory No. 1 that such injuries, including Sabo's depression, were "severe." Moreover, Plaintiff has in opposing Defendant's motion reiterated that such emotional disruptions as a result of the Defendant's hostile working conditions were "serious." Further, although Plaintiff asserts that Sabo did not seek professional treatment for the severe depression he experienced while employed with Defendant for a relatively brief period, Sabo did require such treatment by a social worker in May 1999 immediately after his alleged constructive discharge, and within a relatively short period following his return to Ohio after leaving Defendant's employ. Additionally, Sabo was prescribed strong antidepressants to help ameliorate his depression. Finally, Sabo has previously attempted suicide before his employment with Defendant and has a family history of suicide. Thus, although Plaintiff attempts to avoid the grounds for the mental examination by limiting the period of depression to the period of employment, the logical inference from the facts is that such depression was nonetheless severe. These factors strongly support the conclusion that Plaintiff's request for $300,000 in compensatory and punitive damages based on, *inter alia,* the serious depression inflicted upon Sabo by Defendant's failure to prevent the sexual

1. According to the *Physician's Desk Reference,* Depakote is prescribed for seizures and convulsions and to control manic episodes—periods of abnormally high spirits and energy—that occur in bipolar disorder (manic depression); Paxil is prescribed for "serious continuous depression, obsessive-compulsive disorder and panic disorder;" Wellburtrin is given to "relieve certain kinds of major depression." http://www.pdrhealth.com/drug-info/rxdrugprofiles/drugs/dep1123.shtml; http://www.pdrhealth.com/drug-info/rxdrugprofiles/drugs/pax1319.shtml; http://www.pdrhealth.com/drug-info/rxdrugprofiles/drugs/well488.shtml.

harassment as charged by Plaintiff, places Sabo's mental condition in controversy.

Plaintiff's contentions that the allegations as to Sabo's mental distress damages present merely a "garden variety" mental distress claim and therefore insufficient to justify a Rule 35 mental examination are unpersuasive. Depression, although a growing health problem for many in our society, often requiring professional medical assistance and prescribed medications, is hardly a "garden variety" form of emotional distress in all cases. In fact, serious depression is an acknowledged precursor, if not direct cause, of suicide. Anne Neville, "The Spector of Suicide," *The Buffalo News*, 26 August 2003, p. C–5 (noting depression, bi-polar disorder and schizophrenia as common illnesses associated with suicide). Plaintiff fails to explain how Defendant, or any defendant, could fairly defend a claim for damages based on serious depression merely by cross-examination of the charging party and a treating physician, without a Rule 35 mental examination. Even examination of a party's medical records may be inadequate to enable a defense expert to provide countervailing opinion as to the true cause and extent of such depression, or other forms of a plaintiff's emotional problems.

Here, Sabo admitted to being depressed before his employment with Defendant and attempting suicide because of the "break-up of a relationship" with another person. Exhibit C to Defendant's Motion at 25, 35. If, as Plaintiff now asserts, Sabo's depression was made severe or serious while employed by Defendant, it cannot be gainsaid that Sabo's mental condition in this lawsuit is not in controversy. Given the existence of other potential contributing causes, in addition to Defendant's alleged hostile workplace, of Sabo's severe depression, such as Sabo's earlier breakup of a significant relationship and suicidal ideations, there is a need for Defendant to fairly defend these allegations, both as to the issues of causation and the extent of Sabo's psychological problems, with the assistance of a trained psychiatrist such as Dr. Joseph. Plaintiff does not object to Dr. Joseph's credentials or to Sabo's travel to Buffalo to facilitate the examination as Defendant has agreed to pay Sabo's travel costs.

Plaintiff's primary argument against Defendant's showing of good cause is that because the alleged harassment occurred over four years ago, *i.e.*, between the fall of 1998 and April 1999, during Sabo's employment with Defendant, it will be impossible for an examination as to Sabo's current mental health to provide a basis for opining as to whether Sabo suffered the serious depression he claims as a result of Defendant's hostile work environment. Plaintiff's Opposition at 4 ("A present date assessment of [Sabo's] mental health is meaningless given that the [Plaintiff] alleges no severe ongoing mental injuries."). However, at oral argument, Plaintiff was asked by the court for any expert or legal support for such a sweeping proposition, and was unable to provide any. In any event, whether Defendant's expert will be able to discern, four years after the fact, whether it is plausible that Sabo was severely depressed during the relevant period and that such condition was or was not caused or aggravated by the alleged harassment, is a question of competency and credibility that must await trial. Such considerations are therefore no barrier to the requested examination, a form of pretrial discovery.

Plaintiff also argues the scope of the examination should be controlled to prevent Defendant from attempting to "dig up whatever 'dirt' they can regarding Mr. Sabo's personal life." Plaintiff Opposition at 10. Aside from gratuitously impugning the professional character of Dr. Joseph, whose credentials Plaintiff does not dispute, if the premise and logic of Plaintiff's argument were correct, no mental examination pursuant to Rule 35 would ever be granted. The court finds Plaintiff's assertion unsupported. Nothing in the record plausibly suggests Defendant is proceeding with such a nefarious purpose, sufficient to defeat an otherwise adequate showing of good cause. Accordingly, the court additionally finds that Defendant has met its burden of establishing good cause for the requested examination.

Plaintiff also argues that, if granted, the examination should be monitored through the presence of Sabo's attorney or recorded. Plaintiff's Opposition at 11. First, federal

law generally rejects requests that a party's attorney attend a Rule 35 examination. *See Tirado v. Erosa*, 158 F.R.D. 294, 295 (S.D.N.Y.1994) (citing cases); *DiBari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 13 (E.D.N.Y.1989) (citing cases). This view proceeds on the principle that in federal proceedings (unlike many state courts) such examinations are viewed as non-adversarial. *Id.* Further, as to its request for having the examination tape recorded, Plaintiff has provided no reason to believe that any improper techniques may be utilized by Dr. Joseph and Mr. Sabo has not provided an affidavit suggesting any reason to believe that there is a risk of miscommunication between himself and Dr. Joseph such that he would be unable to recount for his attorney with reasonable accuracy the array of questions by Dr. Joseph's questions and Mr. Sabo's responses to facilitate potential examination of Dr. Joseph. *Compare DiBari, supra*, (court reporter permitted to be present where plaintiff was poorly educated, middle-age person with difficulty in English language). Moreover, Plaintiff will receive a "detailed written report" from Dr. Joseph. Fed.R.Civ.P. 35(b).

Whether to grant such a recording request is discretionary with the court. *Tirado, supra*, at 295. Failure to show special circumstances for the need to have an attorney or court reporter present will defeat a request for such relief. *Id.*, at 295, 299. *See DiBari, supra*, at 13; *Tomlin v. Holecek*, 150 F.R.D. 628, 631 (D.Minn.1993) (request for tape recording of mental examination by psychiatrist rejected absent "factual verification" supporting need for request). Further, absent such special circumstances, the court finds that such recording system may undermine the effectiveness of the examination. *Tirado, supra*, at 296. Finally, Plaintiff relies, Plaintiff's Opposition at 11, upon *Zabkowicz v. The West Bend Co.*, 585 F.Supp. 635 (E.D.Wis.1984) in which the court permitted the presence of counsel or a recording device at a mental examination because "an unsupervised examination could easily be transformed into a de facto deposition." *Zabkowicz, supra*. However, such a view of the Rule 35 examination process is not in keeping with the general holdings of federal courts on this issue and would, if followed in all cases, undermine the ability of the requesting party's expert to conduct an effective examination without a showing of any special circumstances to justify such an unusual mode of conducting a sensitive medical examination. For these reasons, *Zabkowicz* should not be followed. Therefore, Plaintiff's request that counsel be present, or the examination recorded, is DENIED.

■ Defendant further requests Sabo's medical records from 1994 to the present. The lengthy and serious nature of Sabo's alleged depression and related psychological problems, Plaintiff's allegations that Defendant's conduct caused such depression to become severe while Sabo was employed with Defendant, and Plaintiff's claim for Sabo's unpaid medical expenses after his constructive discharge, supports a finding that such records are relevant to Plaintiff's claims and of potential assistance to Dr. Joseph in the conduct of the requested examination. Accordingly, Defendant's motion to compel such records is GRANTED.

■ As to Defendant's request for costs in connection with the motion, the court notes that such sanction is available for refusal to comply an order granting a Rule 35 examination, not for the need to bring the motion in the first instance. Fed.R.Civ.P. 37(b)(2). Rule 35, by its terms, contemplates that the examination be on motion unless otherwise agreed to by the parties by stipulation. *See* Fed.R.Civ.P. 29. However, as the court has found that the requested records are relevant to Mr. Sabo's claim for emotional distress damages and for unpaid medical expenses, and that Defendant's liability for such damages turns on whether Defendant caused Sabo's psychological conditions requiring such expenses, the requested records are relevant to Plaintiff's claims regardless of whether the Rule 35 examination at issue was granted. Accordingly, for the reasons discussed, the court finds Plaintiff's refusal to provide such records was not substantially justified. Fed.R.Civ.P. 37(d). Therefore, Defendant's motion for costs relating to this request is GRANTED.

## CONCLUSION

(1) Defendant's motion for a mental examination by Dr. Brian Joseph pursuant to Rule 35 is GRANTED. Such examination shall be conducted over one continuous eight hour period, with a one hour lunch break, if needed. The examination shall be conducted *within 30 days* of service of this Decision and Order.

(2) Plaintiff's request that counsel be present or the examination recorded is DENIED.

(3) Defendant's motion to compel production of Plaintiff's medical records for the period 1994 to the present or delivery, at Defendant's option, of executed authorizations to release such records is GRANTED. Such records or authorizations shall be produced or provided *within 45 days* of service of this Decision and Order.

(4) Defendant's request for costs in connection with its Rule 35 motion is DENIED. Defendant's costs in connection with Defendant's motion to compel Mr. Sabo's medical records is GRANTED. Defendant's affidavit of costs shall be filed *within 10 days* of this Decision and Order; Plaintiff's response shall be filed *within 10 days* of Defendant's filing. Oral argument will be at the court's discretion.

SO ORDERED.