Stephen and Tina ROMANO, husband and wife; Martin and Vicki Sy, husband and wife; and Joe Balazs, Plaintiffs,

v.

II MORROW, INC., an Oregon corporation; and Toppan Moore Co., a Japanese corporation, Defendants.

Civil No. 94–1308–FR.

United States District Court, D. Oregon.

May 6, 1997.

See also 1997 WL 177196.

Arthur C. Johnson, Johnson, Clifton, Larson & Corson, Eugene, OR, William Rutzick, Corrie J. Yackulic, Schroeter, Goldmark & Bender, Seattle, WA, David N. Mark, Seattle, WA, for Plaintiffs.

Christopher W. Angius, Perkins Coie, Portland, OR, G.H. Gromel, Jr., Hunton & Williams, Richmond, VA, Anne E. Kershaw, Hunton & Williams, New York City, for Defendant II Morrow, Inc.

James D. Hibbard, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for Defendant Toppan Moore Co.

## OPINION AND ORDER

FRYE, District Judge:

In these related actions, the plaintiffs, all package car drivers for United Parcel Service, allege that they have suffered repetitive stress injuries from using a hand-held computer known as a delivery information acquisition device as part of their jobs. Before the court is plaintiffs' objections to defendants' proposed physical examination procedures and request for conditions (# 118).

## BACKGROUND

The defendants sought to have a physician or physicians of their choosing conduct physical examinations of the plaintiffs pursuant to Fed.R.Civ.P. 35. On April 3, 1997, the court granted the motion and ordered the defendants to file notices specifying the time, the place, the length, the manner, the conditions, and the scope of the examinations of the plaintiffs, and the person or persons who will conduct those examinations. The court gave the plaintiffs ten days to object to the notices filed by the defendants. The plaintiffs have filed objections relating to two general areas: (1) the questioning of the plaintiffs by the physician or his staff during the examination; and (2) the ability of the plaintiffs to have an observer with the plaintiffs during their examinations.

## ANALYSIS AND RULING

1. *Questioning*

The physical examinations will be conducted by Dr. Peter Nathan and his staff. It is Dr. Nathan's practice to have the patient for whom he is conducting an independent medical examination complete a one-page patient information sheet and a two-page questionnaire concerning the patient's current symptoms. Dr. Nathan and Kenneth Meadows, a physical therapist who makes an evaluation of hand function as part of a medical examination, normally take oral medical histories which include questions that are not medical in nature but are useful to medical doctors in forming their medical opinions, such as the patient's work history and level of fitness.

The plaintiffs contend that they have heretofore been subjected to depositions and interrogatories, and that they have provided to the defendants complete copies of the medical files obtained from all of their physicians. The plaintiffs contend that any additional questioning is burdensome, an invasion of their privacy, and will only subject them to further questioning by an agent of the defendants who is experienced in litigation, namely, Dr. Nathan. The plaintiffs suggest two alternatives: (1) they will fill out the two-page symptom questionnaire but not the one-page patient information sheet, and Dr. Nathan and his staff will ask no further questions during the examinations; or, in the alternative, (2) Dr. Nathan will submit his proposed questions in advance, and he will

not ask any additional questions during the examinations.[1]

The defendants contend that Dr. Nathan and his staff must ask questions during the examinations in order to ascertain any changes in the medical histories of the plaintiffs since their depositions were taken and to fully assess the present medical conditions of the plaintiffs. The defendants agree with the plaintiffs that the final paragraph on the patient information sheet is unnecessary and may be stricken.

■ To restrict a physician from questioning a patient during a physical examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions. The questioning of the plaintiffs by defense counsel during the taking of their depositions, the historical medical records, and the answers of the plaintiffs to interrogatories are no substitute for the answers to questions that a physician must pose to a patient during a physical examination. All of the questions that a medical doctor needs to ask, in particular the follow-up questions, cannot be determined in advance of the medical examination. The court will not prohibit the taking of oral medical histories by both Dr. Nathan and Mr. Meadows, the physical therapist. Although it would be more convenient for the plaintiffs to give one oral medical history, the court will not require Dr. Nathan and his staff to deviate from the procedures that they normally follow. There is no indication that the two oral medical histories are being conducted to harass the plaintiffs. Rather, since all examinations of a plaintiff will be conducted during one half-day, it would be difficult for the oral medical history to be transcribed quickly enough for the other examiners to use. Dr. Nathan and his staff may ask any questions necessary to conduct the examinations and to formulate opinions as to the medical conditions of the plaintiffs and the causes of their physical abnormalities.

The plaintiffs contend that some of the questions on the one-page patient information sheet are unnecessary. The patient information sheet has seven sections. The court will require the plaintiffs to answer the following sections:

*First section beginning with "Patient's Name."* The plaintiffs must fully answer this section, including the marital status of the plaintiff. The court believes that a patient's marital status, and whether the patient lives alone or with others, could be relevant to a diagnosis of upper extremity problems.

*Second section beginning with "Name of Spouse,"* Information about the employers of the plaintiffs' spouses is not relevant to the plaintiffs' medical conditions. The plaintiffs need not answer this section.

*Third section beginning with "Date of injury,"* The plaintiffs must answer this section except for the last question, "Who referred you to this office?"

*Fourth section beginning with "Is this a job-related injury?"* The plaintiffs must answer this section. The plaintiffs' opinions concerning what caused their injuries may be of use to Dr. Nathan when he considers the causation of any abnormalities.

*Fifth section beginning with "Private Health Insurance."* The plaintiffs need not answer this section. Private insurers of the plaintiffs will not be required to pay for these examinations.

*Sixth section beginning with "Person to contact."* The plaintiffs need not answer this section. Dr. Nathan will contact the plaintiffs only through their attorneys.

*Seventh section beginning with "Physical therapy services."* The plaintiffs need only sign and date the form.

The plaintiffs should be provided with an edited version of the patient information sheet so that there is no confusion on their part as to what questions to answer.

### 2. Observers

■ The plaintiffs ask that they be accompanied to their physical examinations by a non-attorney observer, a certified hand specialist who will observe the examinations and

---

1. In their reply, the plaintiffs characterize their request as limiting questions to those meaningful to the examination and that avoid redundancy and harassment.

take notes but who will not interfere in any way with the examinations. The plaintiffs ask for an observer to provide reassurance and comfort to the plaintiffs who are not from the Portland, Oregon area where the examinations will take place. The plaintiffs also contend that an observer would be an additional witness if Dr. Nathan and his staff recall events during the examination differently from the plaintiffs. In the event that the court concludes that Dr. Nathan and his staff may orally question the plaintiffs during their examinations, the plaintiffs ask that their attorneys be allowed to observe.

The defendants contend that attorneys are rarely ever allowed to observe a medical examination, and that recent opinions in federal court do not allow non-attorney observers. Mr. Meadows states that the presence of a non-attorney observer causes a plaintiff or claimant to become guarded and defensive, and that an observer interferes with the examiner's ability to obtain a complete medical history and accurate responses to physical tests.

The courts are divided as to whether an attorney or other observer may attend a physical examination. Many of the courts who allow an observer, however, are construing a workers' compensation law which denies benefits to claimants who obstruct an independent medical examination. *See Tri–Met, Inc. v. Albrecht*, 308 Or. 185, 777 P.2d 959 (1989) (construing ORS 656.325(1): "If the worker refuses to submit to any such examination, or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place. . . ."). Workers' compensation cases address issues different from the issues raised as to whether conditions should be put on examinations conducted pursuant to Fed.R.Civ.P. 35. The majority of cases cited by the parties do not allow observers.

The court adopts the reasoning found in *Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68 (E.D.Pa.1996), in which the court refused to allow the plaintiff's personal psychiatrist, a court reporter, or a recording device to be present when a psychiatric examination of the plaintiff was conducted for the defendant.

The *Shirsat* court based part of its reasoning on the fact that a psychiatric examination requires an "unimpeded, one-on-one exchange between the doctor and the patient." *Id.* at 71. Although the examination at issue before this court is a physical examination, and not a psychiatric one, the remainder of the *Shirsat* analysis applies here:

> This Court finds that an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process. . . .
>
> . . . .
>
> . . . [A]n observer [could] potentially distract the examining psychiatrist and examinee thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry. . . . The Court finds that the presence of an observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

*Id.* at 70–71.

Furthermore, the plaintiffs have not provided an explanation for why they would require comfort during the examinations, except that they are from out of town and the examiners are perceived to be agents of the defendants rather than independent experts. None of the plaintiffs are children. The examinations do not require them to disrobe. The court read some of the medical records of the plaintiffs during the briefing for previous motions—these people have been to doctors many times in their past. None of the plaintiffs claim a fear of doctors which would be ameliorated by an observer. Dr. Nathan will give his opinion as an expert for the defendants during these trials. His expert opinion is his professional conclusion. The court does not foresee events which would lead to the need for a third party to relate what happened during the examinations. The plaintiffs will be allowed to present expert testimony from a physician of their choice to rebut Dr. Nathan's opinion. Thus, the court denies the request of the plaintiffs

to have an observer attend their physical examinations.

## CONCLUSION

The plaintiffs' request to file reply (# /121) is GRANTED. The plaintiffs' objections to defendants' proposed physical examination procedures and request for conditions (# 118) is GRANTED in part and DENIED in part as discussed above.

IT IS SO ORDERED.