Keren HERTENSTEIN, Plaintiff,

v.

KIMBERLY HOME HEALTH CARE, INC., Defendant.

No. Civ.A. 98–2369–JTM.

United States District Court,
D. Kansas,
Kansas City Division.

June 14, 1999.

622

Sarah A. Brown, Sharon A. Coberly, Coberly & Brown, Overland Park, KS, for plaintiff.

Carl A. Gallagher, Lawrence D. Greenbaum, Juliann Johnson, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendant.

### MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

The court has under consideration the following three motions:

1. Motion for a Mental Examination Pursuant to Fed.R.Civ.P. 35 (doc. 31);

2. Plaintiff's Motion for Protective Order (doc. 37); and

3. Plaintiff's Motion to Quash Subpoena (doc. 39).

All motions are opposed.

## I. Motion for Mental Examination and Motion for Protective Order

The court will consider the first two motions together, as interrelated. Pursuant to Fed.R.Civ.P. 35, defendant seeks an order for a mental examination of plaintiff. In response plaintiff moved for a protective order. The parties agree a mental examination is appropriate. They disagree, however, on the conditions for it. Defendant wants Dr. Patrick Hughes to examine plaintiff in his office with no others present. Plaintiff wants the examination tape recorded. She wants it to take place in a familiar place, such as the offices of her attorney. She wants breaks whenever she feels the need for them. During the examination she wants to be able to communicate with others about any concerns she may have about the examination or her emotional responses. She wants someone of her choosing present, including her attorney or legal assistant. She wants Dr. Hughes to provide advance assurances that he will interview and examine her with extra sensitivity. She wants him to disclose beforehand the nature of the questions he intends to ask and what tests he plans to administer. She also wants to forbid Dr. Hughes from inquiring into her private, non-work-related sexual activities.

■ Fed.R.Civ.P. 35(a) provides the court discretion to order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner." Parties have no inherent right to examine the mental or physical health of an adversary. *Chaparro v. IBP, Inc.,* No. Civ.A. 93–2200–GTV, 1994 WL 714369, at *2 (D.Kan. Dec. 7, 1994). Courts compel such examination "only on motion for good cause shown and upon notice to the person to be examined and to all parties." Fed.R.Civ.P. 35(a).

■ An order to compel examination, furthermore, "shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Fed.R.Civ.P. 35(a). "Strictly construed" this provision "would require" the court to specify the listed details in its order granting a motion for examination. *Sauer v. Burlington N.R.R.,* 169 F.R.D. 120, 124 n. 4 (D.Minn.1996). Parties seeking a court-ordered mental or physical examination should provide the necessary details. They otherwise risk denial of their motions solely on grounds that they failed to provide adequate details of the examination. *See Woods v. Century I, L.C.,* No. Civ.A. 92–2092–JWL, 1993 WL 33339, at *1 (D.Kan. Jan. 11, 1993) (overruling a motion for examination for the failure of the movant to provide any particulars of the examination other than the identity of the examiner); *Meyer v. Lederle Lab., Inc.,* No. 88–1420–T, unpublished op. at 3–4 (D.Kan. Dec. 27, 1988) (overruling a motion for examination for the failure of the movant to adequately define its scope or identify the persons to conduct the examination and tests).

■ The failure to provide all particulars about the examination, however, does not necessitate denial of a motion for examination. *See Thiessen v. General Elec. Capital Corp.,* 178 F.R.D. 568, 571 n. 4 (D.Kan.1998); *Dahdal v. Thorn Americas, Inc.,* No. 97–2119–GTV, 1998 WL 37532, at *2 (D.Kan. Jan. 28, 1998); *Doty v. Zimbelman,* No. Civ.A. 96–2499–GTV, 1997 WL 728120, at *1–2 (D.Kan. Nov. 20, 1997). The court may sustain the motion but "leave the specifics to be worked out by the parties." *See Doty,* 1997 WL 728120, at *1. It may order the examination "subject to further motion and order which shall specify those details." *See Dahdal,* 1998 WL 37532, at *2. It may also sustain the motion, subject to agreement of the parties on the particulars of the examination. *See Thiessen,* 178 F.R.D. at 571 n. 4. If they cannot agree, the court may resolve the procedure upon further motion of the parties. *Id.* Deferring this task to the parties permits them to better accommodate each other's interests, as well as the availability of the physician and the party to be examined. *See Sauer,* 169 F.R.D. at 124 n. 4.

In this instance it appears defendant has provided sufficient particulars to enable the court to fashion an order in compliance with Fed.R.Civ.P. 35(a). It has specified the time and place of examination. It wants a psychiatric evaluation of plaintiff as to her claims of emotional distress. This defines the scope of the examination. It has also identified the examining physician. It limits those to be present to plaintiff and Dr. Hughes. Briefing reveals that the examination will last two hours. Defendant would direct plaintiff to bring her current medications to the examination. Defendant identifies no other conditions on the examination. Rule 35(a) requires no further specificity. When ordering a mental examination, the court assumes the selected physician will conduct the examination in an ethical and professional manner.

> Because the mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided that it is not an improper examination.

*Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609 (C.D.Cal.1995).

That defendant has proposed the particulars for an order, however, does not require the court to adopt them. Rule 35(a) clearly contemplates the imposition of conditions upon an examination. To satisfy the purposes of Rule 35(a), the court may in its discretion enter appropriate protective orders pursuant to Fed.R.Civ.P. 26(c). *Chaparro v. IBP, Inc.,* No. Civ.A. 93–2200–GTV, 1994 WL 714369, at *2 (D.Kan. Dec. 7, 1994). Plaintiff asks for a number of conditions. For each one, she must demonstrate good cause, within the meaning of Rule 26(c). The court will otherwise not impose it.

Fed.R.Civ.P. 26(c) grants the court discretionary authority to place appropriate conditions on discovery. *See Thomas v. IBM,* 48 F.3d 478, 482 (10th Cir.1995). It provides that the court, upon a showing of good cause, "may make any order which

justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective order, however, has the burden to show good cause for it. *Sentry Ins. v. Shivers,* 164 F.R.D. 255, 256 (D.Kan. 1996). To establish good cause, that party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

Plaintiff alleges that defendant has violated federal law prohibiting sexual harassment and retaliation in the work place. (First Am.Compl. with Jury Demand, doc. 25.) She alleges that she has suffered emotional distress and mental anguish as a result of the violations. (*Id.* ¶¶ 37, 44, 51.) She has been diagnosed with major depressive disorder and recurrent and post-traumatic stress disorder. She has had numerous suicidal ideations. Her therapist, Ana M. Sancho, Ph.D., has advised that, to avoid triggering a suicidal episode, extra caution and sensitivity are required in interacting with plaintiff about matters relating to this case. Dr. Sancho avers that, in her professional opinion, "an examination by a psychologist and/or a psychiatrist retained by defendant could result in additional psychological damages to [plaintiff]." (Aff. of Ana M. Sancho, Ph.D., ¶ 3, attached as Ex. C to Pl.'s Resp. to Def.'s Mot. for Mental Examination and Pl's Mot. for Prot. Order, doc. 38.) Dr. Sancho recommends the following measures which, in her professional opinion, will reduce the stress to plaintiff:

1. That the examination take place in a "nonthreatening" location, such as Ms. Hertenstein's attorney's office;

2. That Ms. Hertenstein be allowed to have a person of her choosing present during the examination;

3. That an audio recording be made;

4. That Ms. Hertenstein be allowed to take breaks as she deems necessary and that she be allowed to make brief phone calls as she deems necessary; and

5. That examiner be informed and his/her assurance obtained that the examination be conducted in as sensitive, non-threatening, nonoverbearing manner as possible.

(*Id.*)

Defendant counters the affidavit of Dr. Sancho with an affidavit of its selected physician. (*See* Aff. of Patrick Lawrence Hughes, M.D., [hereinafter Aff. of Hughes], attached as Ex. 7 to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Mental Examination and Resp. to Pl.'s Mot. for Prot. Order, doc. 48.) Dr. Hughes makes the following pertinent averments:

7. It is my professional opinion, based upon my practice and experience, that the presence of a third party or the presence of a recording device is inimical to the process of performing a proper, professional psychiatric clinical or medicolegal evaluation. The presence of a third party or a recording device interferes with the one on one communication which is essential to the evaluation process, prohibits establishment of rapport, and unavoidably establishes an adversarial, mistrusting expectation by the patient.

8. The restrictions upon the psychiatric evaluation that plaintiff's counsel has requested in the PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR MENTAL EXAMINATION AND PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER are not part of any proper clinical or medicolegal evaluation, to my knowledge. If the psychiatric examination is ordered to be tape recorded, or attended by a third party, or taken in plaintiff's counsel [sic] office, with the plaintiff given the opportunity to discuss the [independent medical examination] and with limitations beyond what are imposed by psychiatric medical practice, the results of any such evaluation will be of no objective clinical value to the court.

9. Accordingly, I would not undertake a psychiatric evaluation with these restrictions or any combination of these restrictions because they are contrary to good clinical or medicolegal psychiatric practice and would absolutely preclude my completion of the task requested by counsel. A thorough, professionally done psychiatric evaluation provides counsel with an objective psychiatric opinion of reasonable medical·certainty, but is also certainly performed in keeping with ethical clinical practices (i.e., utilizing sensitivity, civility and attention to the patient's well being). Accordingly, no reputable psychiatrist that I know would perform a bogus psychiatric evaluation with the previously mentioned restrictions or any ̦combination of the restrictions. A valid evaluation with opinions formed to the level of reasonable medical certainty could not be prepared because of the restrictions requested by plaintiff's counsel.

(*Id.*)

■ Given these averments and factual background, the court addresses the requested protections. Plaintiff seeks to locate the examination in a familiar place, such as the offices of her attorney. The court finds no good cause for the restriction. Her physician suggests only that the examination take place in a non-threatening location. Plaintiff presents nothing to indicate that the office of Dr. Hughes does not satisfy that suggestion. The court declines to infer that his office is threatening merely because defendant retained him. His office, furthermore, would presumably provide the best location for his examination of plaintiff. It would be equipped with everything the doctor would need to complete the examination, including staff, supplies, and a professional setting.

■ Plaintiff wants to take breaks whenever she feels the need. She wants to be able to communicate with others during the examination about any concerns she may have about it or her emotional responses. The court finds such requests inimical to an effective psychological evaluation. Defendant has scheduled a two-hour examination. The short duration of the proposed examination contradicts a need for disruptive breaks.

To validly examine her mental state, the physician needs to observe plaintiff and her responses unimpeded by unnecessary breaks or distractions. Allowing plaintiff to discuss her concerns with third persons about the examination or her emotional responses during the examination also seems unnecessary and disruptive. Plaintiff has not adequately demonstrated good cause for breaks on demand or communication with outsiders during the examination. A need to reduce stress does not suffice.

■ Plaintiff wants to advise Dr. Hughes of the need to interview her with extra sensitivity and that he provide assurances prior to proceeding that he will conduct the examination accordingly. She has shown no good cause for the conditions. It appears that Dr. Hughes has already been advised of the need to interview her with extra sensitivity. His affidavit reveals a review of the motion of plaintiff for protective order. (Aff. of Hughes, ¶ 8.) That motion adequately advises him of the condition of plaintiff and her desire to be interviewed with extra sensitivity. His affidavit indicates his understanding and commitment to professional care, "utilizing sensitivity, civility and attention to the patient's well being." The court will not further condition the proposed examination on some notice to Dr. Hughes of that desire.

Plaintiff has also shown no good cause to require Dr. Hughes to provide assurances that he will interview her with extra sensitivity. She presents nothing to indicate that he will interview her in a less than professional manner. As a practicing physician, Dr. Hughes presumably understands his duty to conduct examinations in an ethical and professional manner. Such duty includes handling patients in a manner appropriate to their condition.

■ Plaintiff wants Dr. Hughes to disclose prior to the examination the nature of the questions he intends to ask and what tests he plans to administer. Prior disclosure of questions to be asked "is unworkable." *Tomlin v. Holecek*, 150 F.R.D. 628, 631 n. 1 (D.Minn.1993). An examiner cannot reasonably determine all questions beforehand, including follow-up questions. *See Romano v. II Morrow, Inc.*, 173 F.R.D. 271, 273

(D.Or.1997) (addressing the issue in the context of a physical examination). Plaintiff has shown no good cause, furthermore, for prior disclosure of questions or tests. "It would serve no purpose to require [the selected physician] to select, and disclose, the specific tests to be administered in advance of the examination. A detailed report of the mental examination, including the tests administered, will be provided to plaintiff under Rule 35(b)." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D.Cal.1995).

■ Plaintiff also wants to forbid Dr. Hughes from inquiring into her private, non-work-related sexual activities. The court will not so limit her mental examination. This is a sexual harassment case. Dr. Sancho has opined that alleged actions or inactions of defendant proximately caused the emotional distress of plaintiff. To validly assess her mental state, the examiner must have leave to make relevant inquiries. To prohibit inquiry into private sexual activities may unreasonably restrict exploring the history of plaintiff relevant to this case. "To restrict a physician from questioning a patient during a physical [or mental] examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions." *See Romano*, 173 F.R.D. at 273 (addressing the issue in the context of a physical examination). The court assumes the examiner will exercise sound professional discretion and will not pursue private information unrelated to the purpose for the examination. An examining physician under Rule 35(a) may ask the examinee such questions as are necessary to form an opinion about her condition and the cause of the alleged injury. *See id.*

Plaintiff asserts that probing into her private, non-work-related sexual activities would serve no purpose other than to harass her, because Fed.R.Evid. 412 excludes such matters from evidence. Rule 412 "is applicable and has significance in deciding" certain discovery motions. *See Sanchez v. Zabihi*, 166 F.R.D. 500, 502 (D.N.M.1996). "It deals with the relevance of an alleged victim's past sexual behavior or alleged sexual predisposition in sex offense cases." *Ramirez v. Nabil's,*

*Inc.*, No. Civ.A. 94–2396–GTV, 1995 WL 609415, at *3 (D.Kan. Oct. 5, 1995). As amended in 1994, it now applies to civil, as well as criminal cases. *See United States v. Platero*, 72 F.3d 806, 811 n. 3 (10th Cir.1995). It applies "in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual harassment." Fed.R.Evid. 412 advisory committee notes (1994 amend.)

Congress amended Rule 412 "to diminish some of the confusion engendered by the original rule and to expand the protection afforded alleged victims of sexual misconduct." Fed.R.Evid. 412 advisory committee notes (1994 amend.) The rule

aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence of [sic] for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.

The revised rule applies in all cases involving sexual misconduct without regard to whether the alleged victim or person accused is a party to the litigation. Rule 412 extends to "pattern" witnesses in both criminal and civil cases whose testimony about other instances of sexual misconduct by the person accused is otherwise admissible.

*Id.*

Although Rule 412 "does not apply directly to discovery ... the Court must consider it 'in order not to undermine [its] rationale.'" *Burger v. Litton Indus.*, 91 Civ. 0918(WK)(AJP), 1995 WL 476712, at *2 (S.D.N.Y. Aug. 10, 1995) (quoting Fed. R.Evid. 412 advisory committee notes (1994 amend.)). The Advisory Committee Notes regarding the 1994 amendments, nevertheless, clearly state that "discovery of a victim's past sexual conduct or predisposition in civil cases" will continue to be governed by Fed. R.Civ.P. 26. The Notes further provide that

[i]n order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant.

Fed.R.Evid. 412 advisory committee notes (1994 amend.). Consequently, the court "must look to both Fed.R.Civ.P. 26 and Fed. R.Evid. 412" to determine whether requested discovery is appropriate. *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 182 (D.Md.1997).

Inquiries about private, non-work-related sexual activity appear relevant to evaluate the cause and extent of psychological injuries alleged by plaintiff. Plaintiff has proffered no adequate reason for barring such inquiries. The court will allow the questioning, if Dr. Hughes in his professional discretion has a need for it. Plaintiff has demonstrated good cause, nevertheless, to limit dissemination of information regarding her private, non-work-related sexual activities. Such information is inherently confidential. Accordingly, the parties and Dr. Hughes shall use the information only for purposes of this litigation and shall not disclose it to anyone outside this litigation. *See Ramirez v. Nabil's, Inc.*, No. Civ.A. 94–2396–GTV, 1995 WL 609415, at *3 (D.Kan. Oct. 5, 1995).

The court next addresses whether it will condition the proposed examination of plaintiff on the presence of a third person or mechanical recording device. Plaintiff wants to tape record her examination. She contends that Dr. Hughes is not neutral, as defendant engaged him to advance its interests. She claims a right to record the mental examination. She argues that denying her that right would infringe upon her right to be assisted by counsel. She suggests that a tape recording will ensure that the scope and manner of the examination are proper. She fears that an unsupervised examination will be transformed into a *de facto* deposition. She contends her interest in protecting herself from unsupervised interrogation outweighs the interest of defendant in making the most effective use of its expert. She also suggests that a tape recording will ensure an accurate depiction of the procedure and permit her attorney to hear information necessary to cross-examine Dr. Hughes. She believes the recording will comfort her to know that there will be no dispute about her responses. She wants a "familiar" third person present, as recommended by Dr. Sancho. Plaintiff contends that a familiar face in the examining room will partially remove the adversarial nature of the examination. She suggests this will improve its quality and provide her needed comfort.

Defendant opposes recording the examination. It suggests that Dr. Hughes does not become its advocate merely because it retained him. It asserts that his retention establishes no bias sufficient to require restrictions on the examination. It states that he is a board certified psychiatrist, licensed in Kansas and two other states. It notes that there is no allegation or evidence that he has a bias which warrants tape recording the examination.

Defendant further opposes the presence of any third person at the examination. It argues that the courts have rejected such condition. It contends that the presence of a third person interferes with the ability of its doctor to perform a valid, professional, and independent psychiatric examination. It suggests plaintiff has shown no good cause for the condition.

Whether to either allow a tape recorder or a third person at the examination of plaintiff raises only a single issue. *See Holland v. United States,* 182 F.R.D. 493, 495 (D.S.C. 1998) (considering the presence of "a professional videographer or court reporter, or even ... an attended videotape machine" as simply variations of the same condition, *i.e.* the presence of a "third party"); *Barrett v. Great Hawaiian Cruises, Inc.,* No. 96–00257 DAE, 1997 WL 862762, at *1–2 (D.Haw. Sept. 17, 1997) (considering the presence of plaintiff's attorney, some other "lay" observer, or a tape recorder as substantially the same condition); *Shirsat v. Mutual Pharmaceutical Co.,* 169 F.R.D. 68, 70 (E.D.Pa.1996) (finding "that an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process"); *Tirado v. Erosa,* 158 F.R.D. 294, 299 (S.D.N.Y. 1994) (holding that "[t]he introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding, much in the way that television 'coverage' of events qualitatively changes what occurs in front of the camera"); *Tomlin v. Holecek,* 150 F.R.D. 628, 631–32 (D.Minn.1993) (considering the presence of an attorney or a recording device to equate to the presence of a third party).

Plaintiff claims a right to have a third person or mechanical recording device present at her examination. In the absence of such a right, she must demonstrate good cause, within the meaning of Fed.R.Civ.P. 26(c), for the protections sought. *See Chaparro v. IBP, Inc.,* No. Civ.A. 93–2200–GTV, 1994 WL 714369, at *2 (D.Kan. Dec. 7, 1994).

Plaintiff wants the presence of a tape recorder and a "familiar face" at her examination. She makes no attempt to limit whom she may invite. She could invite her attorney, someone from the office of her attorney with whom she is familiar, a family member, or anyone else who falls under the expansive term, "familiar." The court will not try to differentiate between all the various possibilities. It views significant differences, nevertheless, between the presence of a mechanical device and a third person. It also views

significant differences between third persons who are attorneys and those who are not.

The parties cite several cases. Neither party, however, cites relevant case law from the Tenth Circuit Court of Appeals or the United States District Court for the District of Kansas. There appears to be no such decision addressing whether the court should permit the party, subject to examination under Fed.R.Civ.P. 35(a), to have a mechanical device or non-attorney third person present.

■ The District of Kansas, however, has addressed whether the court should permit counsel for the party to be present at the examination. *See Dodd–Anderson v. Stevens,* Nos. 92–1015–MLB and 92–1016–MLB, 1993 WL 273373 (D.Kan. May 4, 1993). *Dodd–Anderson* held that counsel has no right "to be present during a physical or mental examination." *Id.* at *2. It adopted that position for the following reasons:

> First, an independent medical examination should be divested as far as possible of any adversary character. The presence of a lawyer injects a partisan character into what should otherwise be a wholly objective inquiry. Second, the presence of a lawyer creates a potential ethical problem since he becomes a possible witness and might therefore have to withdraw as trial counsel. Third, should the examining physicians improperly question the plaintiff, or if the plaintiff makes statements not germane to the examination, they may be objected to prior to or at trial, at which time an appropriate ruling can be made.

*Id.* (citations omitted). The court declined to permit counsel to be present during the examinations, "[i]n the absence of any evidence that the physicians in question would engage in any improper questioning of the plaintiff." *Id.*

■ Consistent with *Dodd–Anderson,* the court finds plaintiff has no right to have her attorney present. Logically expanding *Dodd–Anderson,* furthermore, the court also finds that she has no right to the presence of any third person or mechanical recording device at the examination. The examination only requires her presence and that of the designated physician and whatever staff may be necessary for its successful completion.

Plaintiff relies upon *Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12 (E.D.N.Y. 1989) and *Zabkowicz v. West Bend Co.,* 585 F.Supp. 635 (E.D.Wis.1984) to support her claimed right to record her mental examination. *Zabkowicz* concedes that plaintiffs "are entitled to have a third party (including counsel) or a recording device at the examination." 585 F.Supp. at 636. This court finds *Zabkowicz* unpersuasive and contrary to the holding in *Dodd–Anderson.* It will follow *Dodd–Anderson.* Extending its rationales to find no right to tape record a Rule 35(a) examination appears a natural extension.

Plaintiff also relies upon *Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12 (E.D.N.Y.1989) to support a right to tape record her examination. *Di Bari* does not address the issue. *See* 126 F.R.D. 12–14. It specifically declined, moreover, to find a right for counsel to attend the examination. *Id.* at 13–14. It allowed a court reporter to attend, but noting that plaintiff there was "a middle-aged man who is not well educated, and more importantly, has difficulty with the English language." *Id.* at 14. It made no holding that plaintiff had a right to the presence of a court reporter. It found only that the facts of the case warranted it. *Id.*

Plaintiff also cites *Di Bari* and *Zabkowicz* for the proposition that denying her the right to record her mental examination infringes upon her right to be assisted by counsel. In *Di Bari* the court noted that some state cases have held that denying a plaintiff the right to have counsel present at a Fed. R.Civ.P. 35(a) examination infringes upon the right to be assisted by counsel. 126 F.R.D. at 13. The court then noted that federal cases "take a diametrically opposite view of the problem and generally prohibit plaintiff's attorney from being present at a psychiatric or physical examination by defendant's doctor." *Id.* Federal law provides the rule of decision in this case. State law has no applicability in resolving the procedural issue now before the court. *Tomlin v. Holecek,* 150 F.R.D. 628, 633 n. 4 (D.Minn.1993). The court in *Di Bari* appropriately followed federal law to disallow the presence of counsel.

It utilized the discretion existing under federal law to permit the presence of a stenographer in light of the facts of the case. *Di Bari* provides no support for plaintiff. Nor does *Zabkowicz*. It does not even mention a right to assistance from counsel.

■ That plaintiff has no right to the presence of a third person or mechanical recording device does not resolve the issue. Fed.R.Civ.P. 26(c) provides authority for appropriate conditions upon the examination. *See Tirado v. Erosa*, 158 F.R.D. 294, 297 (S.D.N.Y.1994) (noting that "Rule 35 is silent on the question of who may attend a 'physical or mental' examination, although such examinations, like all other forms of discovery, are subject to the general provision of Rule 26(c)"). The court has discretionary authority under Rule 26(c) to appropriately limit discovery. *See Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir.1995). "[T]he party seeking the presence of a third party or recording device must carry the burden of convincing the court." *Galieti v. State Farm Mut. Automobile Ins. Co.*, 154 F.R.D. 262, 265 (D.Colo.1994). Whether the court permits the presence of a third person, either mechanical or human, depends upon the facts of the case. *Id.; Tirado*, 158 F.R.D. at 298. "In appropriate cases, it may be necessary to issue an appropriate protective order." *Galieti*, 154 F.R.D. at 265. *Tirado* provides insightful guidance:

> Certainly, in an era in which classified advertisements offering expert testimony appear commonly in publications addressed to lawyers, the adversarial context in which these examinations occur is a reality that must be taken into account in determining what procedures best accommodate the conflicting interests of the parties in a particular case.
>
> To make that accommodation, it is not, however, necessary to invest a psychiatric examination with all the trappings of a deposition, or to engraft on Rule 35 an across-the-board rule that may not be appropriate in all cases. Rather, a federal court applying the federal discovery rules should balance the competing considerations involved in the particular case and

set such conditions for the examination as are just.

158 F.R.D. at 298 (footnote omitted).

Three general reasons may argue the presence of a third person or recording device at a Fed.R.Civ.P. 35(a) examination: (1) fear that the examiner, as a person retained by an opponent, will improperly conduct the examination to obtain admissions or other damaging concessions from the examinee; (2) fear that the examiner will utilize improper, unconventional, or harmful examination techniques; and (3) a need for emotional support or comfort during the examination. William Scott Wyatt & Richard A. Bales, *The Presence of Third Parties at Rule 35 Examinations*, 71 Temp.L.Rev. 103, 108–09 (1998). Plaintiff arguably raises each of these. Each one may provide independent support for the presence of a third person or recording device. *See id.* at 108–27.

■ Several factors mitigate against allowing any third person or recording device at the mental examination of plaintiff. The court finds the rationales in *Tomlin v. Holecek*, 150 F.R.D. 628 (D.Minn.1993) persuasive. *Tomlin* held that the presence of a third person or recording device might invalidate the results of the mental examination, while destroying the "level playing field" contemplated by Rule 35. 150 F.R.D. at 631–33. It also held that such presence in the examination would inject a greater degree of the adversarial process into an evaluation that is intended to be neutral. *Id.* at 633–34. It also found the recording of a Fed.R.Civ.P. 35(a) examination, albeit less intrusive, generally inconsistent with the underlying purposes of such an examination. *Id.* at 631.

In *Tomlin*, the court had an affidavit, moreover, from the proposed examining physician. It expressed an "opinion that the presence of a third person, physically or by taperecording, is inimical to the conduct of a valid psychiatric examination." 150 F.R.D. at 631–32. Dr. Hughes expresses a similar opinion. (*See* Aff. of Hughes, ¶¶ 7–9). As in *Tomlin*, the affidavit of the proposed examining physician is uncontroverted. The concerns of Dr. Hughes is essentially corroborated, furthermore, "by those authorities which have considered the argument and

which recognize that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient." *See Tomlin,* 150 F.R.D. at 632. This court agrees generally with *Tomlin* that "the presence of third parties would lend a degree of artificiality to the interview technique which would be inconsistent with applicable, professional standards." *See id.*

The court also agrees with *Tomlin* that the intent of Fed.R.Civ.P. 35 is to provide a "level playing field" between the parties in their respective attempts to appraise the psychological state of plaintiff. Plaintiff agrees with this purpose of Rule 35, but identifies problems with that rationale in the context of this case. She points out that Dr. Sancho is her treating physician, not a specially retained expert. She also claims to have provided defendant a tape-recorded session she had with Dr. Sancho.

*Tomlin* itself recognized the "intrinsic distinctions between the Rule 35 examination and the evaluatory techniques of a treating physician." 150 F.R.D. at 632. It thus characterized the approach adopted by Rule 35 as "a considered attempt to fairly place the parties on a somewhat equal footing." *Id.* That the "playing field" between the parties encompasses a treating physician on one hand and a specially retained medical expert on the other hand provides no sufficient reason to authorize the presence of a third person or recording device.

The court, furthermore, does not view one tape-recorded session with Dr. Sancho as justifying a tape recording of the examination with Dr. Hughes to maintain a "level playing field." Plaintiff has been regularly attending sessions with Dr. Sancho since December 1997. That she recorded one session and produced the recording to defendant does not of itself justify recording the examination of Dr. Hughes. He will examine her for two hours. Recording his examination would not place the parties on equal footing. Defendant has only one taped session out of an unidentified number of sessions with Dr. Sancho. The comparison fails. If plaintiff has attended ten sessions with Dr. Sancho, defendant would have access to only ten per cent of those sessions; but plaintiff would

have access to one hundred per cent of the sessions with Dr. Hughes. Contrary to the arguments of plaintiff, the court finds the intent of Rule 35 for a level playing field provides no occasion to record her examination with Dr. Hughes.

*Tomlin* also teaches that the court should avoid endorsing or promoting "the infusion of the adversary process into the psychologist's examining room." *See* 150 F.R.D. at 634. Such infusion is "inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35." *Id.*

Weighing the concerns of the parties and the physicians, the court finds the presence of a mechanical recording device inappropriate under the facts of this case. Plaintiff has demonstrated no need for it. Its presence may invalidate the results of the examination, as it may consciously or unconsciously influence plaintiff "to exaggerate or diminish h[er] reactions" to the examination. *See Holland v. United States,* 182 F.R.D. 493, 496 (D.S.C.1998). Plaintiff could perceive the recording as "critical to h[er] case and fail to respond in a forthright manner." *Id.* The concerns of plaintiff, and her physician do not outweigh the occasion for a reasonable examination by defendant. In this case there is no evidence that Dr. Hughes will improperly question plaintiff. In the absence of such evidence the court declines to require recording of the examination. *Cf. Dodd-Anderson v. Stevens,* Nos. 92–1015–MLB and 92–1016–MLB, 1993 WL 273373, at *2 (D.Kan. May 4, 1993) (applying same rationale in the context of allowing the presence of an attorney at the Rule 35(a) examination).

The court has authority, of course, "to appoint a physician different from the one proposed if the physician planned to use a discredited technique or one of questionable validity, or one that jeopardized the patient's well-being." *Duncan v. Upjohn Co.,* 155 F.R.D. 23, 27 (D.Conn.1994). The court "is not required to accept defendant's proposed examiner as the examining psychologist." *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609 (C.D.Cal.1995). Upon a valid objection, the court may "appoint a different examiner." *Id.* If a party presents evidence

that the physician chosen to conduct a Fed. R.Civ.P. 35(a) examination may improperly question the party, the better course may be to appoint a different physician, rather than permit the presence of a third person or a relatively non-intrusive recording device.

Counsel for plaintiff has alternative methods, furthermore, to obtain insight into the examination and to prepare for the cross-examination of Dr. Hughes. Plaintiff may obtain a detailed written report of Dr. Hughes upon request. *See* Fed.R.Civ.P. 35(b)(1). The report must "set[ ] out the examiner's findings, including results of all tests made, diagnoses, and conclusions." If defendant designates Dr. Hughes as a "testifying expert", furthermore, Dr. Hughes must provide plaintiff a report containing "a complete statement of all opinions to be expressed and the basis and the reasons therefor." *See* Fed.R.Civ.P. 26(a)(2)(B). The report must also contain "the data or other information considered by [him] in forming [his] opinions." *Id.* If defendant identifies Dr. Hughes "as an expert whose opinions may be presented at trial", plaintiff may depose him. *See* Fed.R.Civ.P. 26(b)(4)(A). Her attorney may then inquire about the examination. Plaintiff may also discover "through interrogatories or by deposition" facts known or opinions held by Dr. Hughes, if defendant chooses not to rely upon his testimony at trial. *See* Fed.R.Civ.P. 26(b)(4)(B).

■ To the extent plaintiff wants to designate her attorney or a legal assistant or paralegal to be present at her examination, the court overrules the request. She has shown no good cause for it. She has presented no evidence that Dr. Hughes may engage in any impropriety. The court will not speculate. For all the reasons stated in *Dodd–Anderson* the court declines the request. The presence of counsel or a legal assistant or paralegal infuses a partisan character into what should be an objective inquiry.

■ The absence of evidence that Dr. Hughes may improperly question plaintiff also impacts the determination of the court with respect to permitting the presence of another person. The court views plaintiff's request for a "familiar face" in the examining room to present two potentially viable alternatives: (1) her treating physician; or (2) a close family member or friend. The court rejects the first alternative. Plaintiff has presented no evidence that Dr. Hughes may improperly question her or use harmful techniques in the examination. When the proposed examining physician "does not propose to use unorthodox or potentially harmful techniques in his examination of [plaintiff] ... there is no need for any of plaintiff's physicians or other mental health professionals to be present during the examination." *Duncan v. Upjohn Co.,* 155 F.R.D. 23, 27 (D.Conn.1994).

■ The second alternative presents a more difficult question. The proposal for a familiar face arises not out of distrust of Dr. Hughes, but from the suggested fragility of plaintiff and need for comfort. She has had several suicidal ideations. She has been diagnosed with a major depressive disorder. Her treating physician has averred that a familiar face will reduce the stress of the examination. The presence of a close family member or friend at her examination may reduce that stress. The presence of a close family member or friend provides no potential advantage to either party. Such presence simply provides comfort to plaintiff.

The court declines to authorize the request in this case. "Third party observers may, regardless of their good intentions, contaminate a mental examination." *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 609–10 (C.D.Cal.1995).

In cases concerning close friends or relatives, the court should allow their presence in only the most extreme circumstances. These people are the most likely to cause severe disruptions during the examination without a good reason. Family members are usually emotionally tied to the lawsuit and the examinee. Even more so than attorneys, family members are apt to interrupt an examination whenever they feel that the physician is causing harm to the examinee. Further, most family members do not have the specialized legal or medical knowledge of attorneys or physicians.

This will cause most of their interruptions to be based on a false sense of harm or impropriety.

William Scott Wyatt & Richard A. Bales, *The Presence of Third Parties at Rule 35 Examinations,* 71 Temp.L.Rev. 103, 128–29 (1998). Mental examinations require "an unimpeded, one-on-one exchange between the doctor and the patient." *Shirsat v. Mutual Pharmaceutical Co.,* 169 F.R.D. 68, 71 (E.D.Pa.1996); *see also, Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn.1993). The presence of a third person, even a close family member or friend, may invalidate the results of the mental examination and will lend a degree of artificiality to the examination which is "inconsistent with applicable, professional standards." *Tomlin,* 150 F.R.D. at 631–32.

Plaintiff cites four cases to support the presence of a third person or recording device. The court has discussed two of them. The court declines to follow *Zabkowicz v. West Bend Co.,* 585 F.Supp. 635 (E.D.Wis. 1984) as contrary to *Dodd–Anderson v. Stevens,* Nos. 92–1015–MLB and 92–1016–MLB, 1993 WL 273373 (D.Kan. May 4, 1993). The court finds *Di Bari v. Incaica Cia Armadora, S.A.,* 126 F.R.D. 12 (E.D.N.Y.1989), furthermore, factually distinguishable from the present case.

The court also declines to follow *Lowe v. Philadelphia Newspapers, Inc.,* 101 F.R.D. 296 (E.D.Pa.1983). The case is not followed in its own district. *See Shirsat v. Mutual Pharmaceutical Co.,* 169 F.R.D. 68, 70 (E.D.Pa.1996). For the reasons stated in *Shirsat,* this court likewise declines to follow *Lowe.*

■ *Vreeland v. Ethan Allen, Inc.,* 151 F.R.D. 551 (S.D.N.Y.1993), furthermore, stands only for the proposition that a magistrate judge does not necessarily abuse his discretion by authorizing the presence of an attorney at a Fed.R.Civ.P. 35(a) examination. 151 F.R.D. at 551–52. This court agrees generally with that proposition. Rare circumstances may justify the presence of counsel. The court, nevertheless, finds no occasion in this case to authorize the presence of counsel or any other third person at the examination of plaintiff.

■ When a person requests the presence of a third person or recording device out of fear that the examiner will utilize improper, unconventional, or harmful examination techniques, the movant must present facts to validate the fear. *See Duncan v. Upjohn Co.,* 155 F.R.D. 23, 27 (D.Conn.1994) (specifically addressing utilization of unorthodox or potentially harmful techniques). Plaintiff has neither alleged nor suggested that Dr. Hughes intends to utilize unorthodox or potentially harmful techniques. She merely suggests that the presence of a third person or recording device would comfort her in her allegedly fragile condition and would assure that Dr. Hughes properly conducts the examination. This does not carry her burden. Unsupported suggestions that the examining physician may improperly conduct the examination also do not suffice. That defendant hired Dr. Hughes does not support the suggestion of impropriety.

■ When a person requests the presence of a third person or recording device out of fear that the examiner will improperly conduct the examination as an advocate for a defendant, the movant must generally present something which indicates that the proposed examiner will be less than impartial to succeed on the request. *See Galieti v. State Farm Mut. Automobile Ins. Co.,* 154 F.R.D. 262, 265 (D.Colo.1994). That defendant hired the examiner does not suffice. *See id.* Both the treating physician of plaintiff and the consultative medical expert of defendant "are bound by the methodologies of their discipline and by the same formal or informal principles of professional integrity." *Tomlin v. Holecek,* 150 F.R.D. 628, 633 (D.Minn. 1993). Plaintiff has shown nothing which demonstrates good cause to permit the presence of a third person or recording device at her examination. She presents no evidence that Dr. Hughes will improperly advocate for defendant, convert the examination into a *de facto* deposition, or otherwise attempt to obtain admissions or other damaging concessions irrelevant to the examination. She has presented no evidence that he is biased, other than inferring it from being retained by defendant.

When a person requests the presence of a third person or recording device because of an alleged need for emotional support or comfort, the movant must demonstrate "a compelling need for support during the examination, such as examinations of a child or examinations that probe into highly intimate areas." William Scott Wyatt & Richard A. Bales, *The Presence of Third Parties at Rule 35 Examinations,* 71 Temp. L.Rev. 103, 129 (1998). While the alleged fragility of plaintiff together with the sensitive areas of inquiry by Dr. Hughes invites serious consideration of the motion, the court finds them insufficient to overcome the factors weighing against the presence of a third person or recording device. Plaintiff is not a child. Nor does the proposed psychiatric examination require her to disrobe. That this is a case of alleged sexual harassment and resulting emotional distress which might necessitate inquiry by Dr. Hughes into the sexual activity of plaintiff does not of itself, or in conjunction with her alleged fragility, warrant the presence of a third person or recording device at the examination. A mental examination of a person which probes into highly intimate areas differs significantly from a physical examination which does so. The latter may in appropriate circumstances warrant the presence of a third person. The former would rarely, if ever, warrant such intrusion in the absence of a child or similar dependent examinee. The proposed mental examination of plaintiff does not warrant the intrusion and accompanying distractions caused by the presence of a third person or recording device.

In summary, the court finds "that an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process." *See Shirsat v. Mutual Pharmaceutical Co.,* 169 F.R.D. 68, 70 (E.D.Pa.1996). "The appropriate inquiry is whether special circumstances are present which call for a protective order tailored to the specific problems presented." *Tirado v. Erosa,* 158 F.R.D. 294, 299 (S.D.N.Y.1994). The court agrees "that the need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and exami-

nee thereby compromising the results of the examination." *See Shirsat,* 169 F.R.D. at 71. The court finds no adequate showing of a special circumstance present which calls for the protections requested by plaintiff.

The court has given appropriate weight to the affidavit of Dr. Sancho. It provides only weak support at best for the requests by plaintiff. It speaks in terms only of bare speculation, without any supporting facts: "an examination ... *could* result in additional psychological damages to my patient." (Emphasis added.) The affidavit enumerates the "measures" that "will reduce the stress levels to my patient." It does not suggest that there will be stress levels of any consequence or that plaintiff requires any special measures to complete the examination. Balancing the competing interests argued by the parties, furthermore, the court finds the conditions plaintiff wants imposed upon her examination not warranted. Defendant has

a legitimate interest in eliminating intrusions that would affect the results of the psychiatric examination of plaintiff to which [it] is entitled by virtue of the allegations of her complaint placing her mental health in issue. Plaintiff's legitimate interest in the proper and professional conduct of the examination and subsequent effective cross-examination of the psychiatrist can be satisfied by means that do not require such an intrusion.

*Tirado v. Erosa,* 158 F.R.D. 294, 300 (S.D.N.Y.1994).

## II. Motion to Quash

The court next addresses Plaintiff's Motion to Quash Subpoena (doc. 39). Pursuant to Fed.R.Civ.P. 45(c), plaintiff thereby seeks to quash the subpoena served upon Hutchinson & Associates to the extent it seeks records of Dr. Marilyn Hutchinson. Defendant opposes the motion. It suggests plaintiff has no standing to quash the subpoena. It further suggests that plaintiff failed to comply with conference requirements of D.Kan.Rule 37.2.

The court first addresses the suggestion that plaintiff failed to comply with her duty to confer. Although Fed.R.Civ.P. 45 itself

imposes no duty to confer, the District of Kansas has imposed such a duty by local rule. *See* D.Kan.Rule 37.2. Rule 37.2 states that

> [i]n addition to the duties to confer set out in Fed.R.Civ.P. 26 through 37, unless otherwise ordered, the court will not entertain any motion to quash or modify a subpoena pursuant to Fed.R.Civ.P. 45(c), unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. Every certification required by Fed.R.Civ.P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes shall describe the steps taken by all counsel to resolve the issues in dispute.

This conference requirement encourages resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must address a dispute that the parties themselves could and should have resolved, it needlessly expends resources better applied elsewhere.

Defendant contends that plaintiff has made no reasonable effort to resolve the dispute before filing the motion to quash. Plaintiff has not replied. The factual assertions of defendant on this issue thus remain uncontested. *See Haselhorst v. Wal–Mart Stores, Inc.,* 163 F.R.D. 10, 11 (D.Kan.1995). The motion and supporting memorandum, furthermore, reveal no efforts to confer in good faith. Plaintiff has filed no separate certification of compliance with the conference requirement of D.Kan.Rule 37.2. She otherwise shows no compliance with the conference requirement. Had counsel put forth adequate efforts to confer, the present dispute may have been resolved. Accordingly, the court declines to entertain and thus overrules the motion to quash.

■ The court notes, furthermore, that plaintiff has no standing to make the motion to quash. "A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D.Kan. 1995). Defendant issued and served the subpoena here in question upon Hutchinson & Associates. (*See* Subpoena in a Civil Case, attached as Ex. A to Suggestions in Supp. of Pl.'s Mot. Quash, doc. 40.) Hutchinson & Associates is the only one entitled to challenge the subpoena under Fed.R.Civ.P. 45(c)(3), "unless a showing is made that [plaintiff] has a personal right to be protected or that the documents are subject to a privilege." *Midland Brake, Inc.,* 162 F.R.D. at 685. Plaintiff makes no argument that she has a personal right to be protected or that the documents sought are privileged. She has thus failed to make the required showing.

### III. Conclusion

For the foregoing reasons, the court sustains the Motion for a Mental Examination Pursuant to Fed.R.Civ.P. 35 (doc. 31); sustains in part and overrules in part Plaintiff's Motion for Protective Order (doc. 37). It declines to entertain and thus overrules Plaintiff's Motion to Quash Subpoena (doc. 39). At a date and time convenient to the examining physician and to all parties, plaintiff shall appear for a two-hour psychiatric examination at the offices of Patrick L. Hughes M.D., located at 8340 Mission, Suite 201, Shawnee Mission, Kansas. She shall take her current medications to the examination. Defendant and Dr. Hughes shall use information regarding the private, non-work-related sexual activities of plaintiff only for purposes of this litigation and shall not disclose it to anyone outside this litigation. The court imposes no other conditions.

IT IS SO ORDERED.